```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF FLORIDA
         TAMPA DIVISION
```

AIN JEEM, INC.,

    Plaintiff,
v.                              Case No. 8:21-cv-1331-VMC-AEP

THE INDIVIDUALS,
PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon Plaintiff Ain Jeem, Inc.'s Motion to Dismiss Hall of Fame Sports Memorabilia's ("HOFSM") Counterclaim, filed on August 2, 2021. (Doc. # 152). HOFSM responded on August 23, 2021. (Doc. # 187). Also pending before the Court is HOFSM's Cross-Motion for Summary Judgment (Doc. # 189), filed on August 25, 2021. Ain Jeem responded on September 15, 2021, and HOFSM replied on September 29, 2021. (Doc. ## 224, 227). For the reasons that follow, Ain Jeem's Motion is denied, and HOFSM's Motion is granted in part and denied in part.

**I.   Background**

Ain Jeem is an international licensing company that owns the "Kareem Abdul-Jabbar" trademark, as well as the trademark

for the following "KAR33M Logo":

**KAR33M**

(Doc. # 224 at ¶ 10) (collectively the "Kareem Abdul-Jabbar Marks"). The Kareem Abdul-Jabbar Marks are used in connection with the design, marketing, and distribution of high-quality athletic clothing and promotional wear. (Doc. # 1-1).

Before this suit was filed, Ain Jeem investigated the promotion and sale of counterfeit and infringing goods by the 77 defendants named in Schedule A. (Doc. # 224-1 at ¶ 3; Doc. # 6). Ain Jeem hired an investigator to initiate purchase orders for products bearing the Kareem Abdul-Jabbar Marks from different e-commerce stores. (Id. at ¶¶ 5-6). In initiating these purchase orders, the investigator arranged to have each identified product shipped to a Florida address. (Id.). Ain Jeem visually inspected the Kareem Abdul-Jabbar-branded items from these initiated purchase orders and determined that the products used its trademarks without prior authorization. (Id. at ¶¶ 5, 11).

HOFSM, one of the many sellers identified in Ain Jeem's investigation, is a seller of high-quality sports collectibles and memorabilia. (Doc. # 189-2 at ¶¶ 3-4). For

2

a limited time, HOFSM sold collectible basketball jerseys bearing the "Abdul-Jabbar" name through e-commerce websites such as eBay, Bonanza, and Amazon. (Id. at ¶ 5). Ain Jeem's investigator found that HOFSM had at least two jerseys available for sale in January and February 2021, that bore the Abdul-Jabbar name: a yellow Los Angeles Lakers jersey available on Bonanza, and a green Milwaukee Bucks jersey available through Amazon. (Doc. # 224-1 at ¶¶ 4, 10). HOFSM ceased selling these products in or around February 2021. (Doc. # 189-2 at ¶ 7).

### A. Ain Jeem I

Ain Jeem brought its first suit against HOFSM and other sellers in the United States District Court for the Middle District of Florida's Tampa Division on May 5, 2021. See Ain Jeem, Inc. v. The Individuals, Corps., LLCs, P'ships, and Unincorporated Ass'ns Identified on Schedule A, No. 8:21-cv-1082-KKM-CPT (M.D. Fla.) ("Ain Jeem I"). The Ain Jeem I complaint asserts claims against the sellers for violations of the Lanham Act, common law unfair competition, and common law trademark infringement. (Id. at 1). HOFSM was identified there through its Bonanza web address. (Id. at Doc. # 9).

The Ain Jeem I complaint broadly alleged the scope of the defendants' infringing conduct and defined the

3

"counterfeit goods" at issue:

> Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale *counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Kareem Abdul-Jabbar Marks through at least the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names* (collectively, the "Counterfeit Goods").

(Id. at Doc. # 1, ¶ 35) (emphasis added). Additionally, it anticipated that unauthorized products using the Kareem Abdul-Jabbar Marks might be found on other e-commerce sites:

> Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling *goods bearing one or more of Plaintiff's trademarks* to consumers within the United States and this District *through Internet based e-commerce stores using, at least, the Seller IDs and Subject Domain Names and additional seller identification aliases and domain names not yet known to Plaintiff*. . . .

(Id. at ¶ 22) (emphasis added). HOFSM was served in Ain Jeem I on or around June 1, 2021. (Doc. # 189-2 at ¶ 9).

## B. Settlement Agreement

After HOFSM was served with the Ain Jeem I complaint, the parties entered into a settlement agreement on June 22, 2021. (Doc. # 189-5 at 7). In exchange for $3,500 and a promise to refrain from selling infringing products in the future, Ain Jeem promised to voluntarily dismiss its claims against HOFSM in Ain Jeem I. (Id. at ¶¶ 4, 7). It also promised

4

"not to sue [HOFSM] in any judicial, administrative, arbitral, regulatory or in any manner seek to assert claims accrued prior to the Effective Date against [HOFSM] for matters alleged in the Complaint." (Id. ¶ 8). HOFSM paid the $3,500 on June 22, 2021 — the same day the settlement agreement was executed. (Doc. # 189-2 at ¶ 16).

### C. Ain Jeem II

This nearly identical suit was filed on June 1, 2021. (Doc. # 1) ("Ain Jeem II"). Unlike Ain Jeem I, this suit identifies HOFSM through its Amazon web address. (Doc. # 6). HOFSM claims that it had no knowledge that Ain Jeem II was also pending at the time it executed the settlement agreement. (Doc. # 189-2 at ¶¶ 18-20). In fact, HOFSM was served with the Ain Jeem II complaint on June 24, 2021, two days after the parties executed the settlement agreement. (Id. at ¶ 18). In response, HOFSM's counsel demanded that Ain Jeem comply with the settlement agreement by dismissing the claims against it in Ain Jeem II and releasing the freeze it held on HOFSM's Amazon account. (Doc. # 189-6 at ¶¶ 10-21). Ain Jeem's counsel refused and demanded an additional $15,000 to unfreeze the account. (Id., Exh. E).

HOFSM ultimately filed its operative counterclaim on July 14, 2021. (Doc. # 67). The counterclaim asserts a claim

5

for declaratory judgment (Count I), a claim for breach of contract (Count II), and a claim for tortious interference with contractual relations (Count III). (Id.).

Ain Jeem filed a Motion to Dismiss the Counterclaim, to which HOFSM responded. (Doc. ## 152, 187). HOFSM also seeks summary judgment on each of its counterclaims. (Doc. # 189). The parties have responded and replied (Doc. ## 224, 229), and the motions are ripe for review.

## II.  Legal Standard

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if

it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846

F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his [conclusory] allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

B. **Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250,

1262 (11th Cir. 2004). Further, the Court favors the plaintiff (or counterclaimant) with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

**III. Discussion**

    **A. Scope of the Settlement Agreement**

"A settlement agreement must generally 'be interpreted like any other contract. That is, absent any evidence that the parties intended to endow a special meaning in the terms used . . . the unambiguous language is to be given a realistic

9

interpretation based on the plain, everyday meaning conveyed by the words.'" Sheets v. Palmer, 914 So. 2d 246, 248 (Fla. 1st DCA 2005) (quoting McIlmoil v. McIlmoil, 784 So. 2d 557, 561 (Fla. 1st DCA 2001)). "In considering the effect to be given to [a release], we begin with 'the assumption that the released claims are those that were contemplated by the agreement.'" Ventana Condo. Ass'n, Inc. v. Chancey Design P'ship, Inc., 203 So. 3d 175, 182 (Fla. 2d DCA 2016). Further, Florida law instructs that a general release that "is not restricted by its terms to particular claims or demands . . . will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution." Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp., 516 F. Supp. 2d 1253, 1268 (S.D. Fla. 2007) (citing Sottile v. Gaines Constr. Co., 281 So. 2d 558, 561 (Fla. 3d DCA 1973)).

The primary contention between the parties is the scope of the settlement agreement. Ain Jeem insists that the settlement agreement exclusively released its claims against HOFSM for sale of a single product — the yellow Los Angeles Lakers jersey offered on Bonanza. (Doc. # 224 at 10). HOFSM counters that the actual terms of the settlement agreement and the Ain Jeem I complaint broadly encompassed all goods that bore the Kareem Abdul-Jabbar Marks without

authorization. (Doc. # 189 at 17).

Here, the settlement agreement broadly covers Ain Jeem's claims against HOFSM in Ain Jeem I and II. The scope of the contract is governed by paragraph 35 of the Ain Jeem I complaint, which the parties specifically referenced in their agreement:

> WHEREAS, Plaintiff filed Case No. 21-cv-01082-KMM, *Ain Jeem, Inc. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A* in the United States District Court for the Middle District of Florida (the "Lawsuit") alleging, among other claims, Defendant's infringing use of Plaintiff's Kareem Abdul-Jabbar Trademarks in connection with certain goods *as described in paragraph 35 of Plaintiff's Complaint in the Lawsuit* (the "Accused Goods").

(Doc. # 189-5 at 2) (emphasis). In turn, paragraph 35 of the Ain Jeem I complaint contemplated that HOFSM may be offering any number of products bearing the Kareem Abdul-Jabbar Marks on any number of e-commerce platforms:

> Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale *counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Kareem Abdul-Jabbar Marks through at least the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names* (collectively, the "Counterfeit Goods"). . . .

(<u>Ain Jeem I</u>, Doc. # 1 at ¶ 35). The settlement agreement also covered claims that could have been, but ultimately were not

brought against HOFSM in Ain Jeem I:

> WHEREAS, to avoid continued litigation, the Parties enter into this Agreement and by so doing seek to fully, completely, and finally resolve, settle, and release all claims arising and/or relating to the facts alleged in the Lawsuit, *including claims and counterclaims which were actually asserted or which could have been asserted in the Lawsuit, based on conduct up to and including Effective Date*.

(Doc. # 189-5 at 1) (emphasis added).

By incorporating the language from paragraph 35, the settlement agreement released all claims concerning infringing goods that may have been offered on Bonanza, Amazon, or other e-commerce platforms before the agreement was executed. The goods at issue in Ain Jeem I could, in theory, cover any product that bears the Kareem Abdul-Jabbar Marks without authorization. Notably, Ain Jeem's investigator discovered HOFSM's jerseys in February 2021, before filing either suit. (Doc. # 224-1). Nonetheless, neither Ain Jeem I nor the settlement agreement narrow the scope of infringing goods to single product or retail channel. As such, Ain Jeem certainly could have included its claims for the goods sold on Amazon through Ain Jeem I despite its choice to do so through the instant suit.

With the assistance of counsel, the parties chose to execute a comprehensive settlement agreement that resolved

all claims that had accrued against HOFSM. (Doc. # 189-5 at ¶ 13(g)) ("Both Parties submit that each has had the opportunity to confer with counsel regarding the terms of this Agreement."). As HOFSM notes, these terms are how Ain Jeem "chose to define the universe of accused goods both in [Ain Jeem I] and in the Settlement Agreement." (Doc. # 189 at 19); see also Gulf Grp. Holdings, 516 F. Supp. 2d at 1268 ("[A] general release which is not restricted by its terms to particular claims or demands . . . will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution."). Accordingly, there is no basis to limit terms of the settlement agreement to a specific product, retail channel, or lawsuit.

In exchange for $3,500, Ain Jeem promised "not to sue [HOFSM] in any judicial, administrative, arbitral, regulatory or *in any manner* seek to assert claims accrued prior to the Effective Date against [HOFSM] for matters alleged in the [Ain Jeem I] Complaint." (Doc. # 189-5 at ¶ 8). As Ain Jeem II was pending before the settlement agreement was executed, failing to dismiss this action against HOFSM was a breach of the settlement agreement.

HOFSM's Motion for Summary Judgment is granted as to Counts I and II of its counterclaim but denied as to Count

13

III, as discussed in greater detail below. Ain Jeem's Motion to Dismiss the Counterclaim is denied as moot to the extent that it seeks dismissal of Counts I and II. See Onofrieti v. Metro. Life Ins. Co., 320 F. Supp. 2d 1250, 1256 (M.D. Fla. 2004) (denying a plaintiff's motion to dismiss a defendant's counterclaim as moot where summary judgment was entered in favor of defendants on the counterclaim).

### B. Counterclaim for Tortious Interference

As a final matter, the Court notes that both parties moved for relief with respect to Count III – the counterclaim for tortious interference with a contractual relationship. (Doc. # 152 at 1; Doc. # 189 at 2). However, neither party has provided argument or authority in support of their requests for relief. The Court declines to do so for them. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here."). HOFSM's Motion for Summary Judgment and Ain Jeem's Motion to Dismiss are denied as to Count III.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

14

(1) Plaintiff Ain Jeem, Inc.'s Motion to Dismiss Hall of Fame Sports Memorabilia, Inc.'s Counterclaim (Doc. # 152) is **DENIED**. Ain Jeem, Inc.'s answer to the remaining counterclaim is due within 14 days of the date of this Order.

(2) Defendant Hall of Fame Sports Memorabilia, Inc's Cross-Motion for Summary Judgment (Doc. # 189) is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** as to Counts I and II of its counterclaim; the motion is **DENIED** as to Count III.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of March, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE